ALABAMA & C. R. CO., (STANTON v.)

[See Stanton v. Alabama & C. R. Co., Case No. 13,297.]

---

## Case No. 128.

### The ALABAMIAN.

[2 Adm. Rec. 254.]

Superior Court, S. D. Florida.  May 8, 1839.

SALVAGE—RECEIVING CARGO TO LIGHTEN STRANDED SHIP—AMOUNT OF AWARD.

[1. Salvors who render no service to a ship which is aground other than receiving part of the cargo which the master was about to jettison, in order to float the ship, have no claim for salvage against the ship, but only against the portion of cargo thus received and saved by them.]

[2. Where a ship is aground in great peril, salvors who receive her cargo to the value of $30,000, and thus lighten her enough to get her afloat, and who willingly and in good faith do their utmost to assist the master both by advice and by helping at the pumps until the vessel gets into port, should get the highest possible award against the cargo so received by them, especially when it is probable that the master would have jettisoned a greater amount of the cargo had they not been present to receive it; and in such case an award of $23,500 is suitable.]

[In admiralty. Libel in rem by William F. English and others against the ship Alabamian and cargo for salvage. Decree for libelants as to a part of the cargo.]

Charles Watkins, for libelants.
A. Gordon, for respondents.

MARVIN, Superior Court Judge.  The ship Alabamian, (Lane, master,) bound from New York to Mobile, laden with an assorted cargo, estimated to be worth $200,000, about four o'clock in the morning of the twenty-sixth of March, ran on to that part of the Florida reef known as the Washerwoman. The master threw overboard a part of his cargo; and after the arrival of the libellants' wrecking vessels a part was transferred on board of them, and brought to this port. The ship being got off the reef, she, with the cargo left on board of her, was also brought here, and libelled in this court for salvage. The facts and circumstances connected with this disaster—the imminent perils which surrounded the ship and cargo, while upon the reef—the manner and means of her preservation, are sufficiently and well set forth in the pleadings.

The first question to be considered is, are the ship and entire cargo subject to the claim of salvage; or is that part of the cargo transferred on board the wrecking vessels, only, subject to the claim of salvage? "Salvage is a compensation given for saving property exposed to marine peril." This

definition is believed to be correct. The property then must be saved by the persons claiming the compensation; for the compensation is given for saving. It must also be exposed to marine peril. If there be no peril there can be no saving. Marine perils and saving from these perils, by the persons claiming salvage, must concur to entitle them to this extraordinary compensation. The entire property must be saved, in order to charge the entire property with the claim of salvage. The saving of part will not create a claim of salvage against the residue. That these are the fundamental rules upon which the right to salvage is based I have no doubt. They were expressly recognized in the case of The Elenor,[1] decided in this court in 1836 by Judge Webb, but held not applicable to that case; as the entire property in that case had evidently been saved by the actors. Let us apply these principles to the case under consideration.—From the testimony in the case I am satisfied that the services of the libellants in no way conduced to the saving of the ship and that part of the cargo left on board of her at the time she came off the reef. They were saved by the coolness and skill of the master, favoring winds, favorable tide, and other auspicious circumstances of nature. Beyond the simple act of receiving a part of the ship's cargo on board their vessels, the services of the libellants were not needed; and under the circumstances of the case, however extraordinary or laborious their exertions to save the ship and cargo might have been, it is evident that their exertions could not save them from the perils which surrounded. The libellants did everything that was wanted—everything that was asked of them—everything they could do to rescue the ship and cargo from her perilous situation. They assisted in lightening the ship. They rescued a part of the cargo aboard their own vessels. But the ship would have been lightened to the same extent by throwing the same quantity of cargo overboard, which could have been done by the master and crew in as short a period of time as was employed in transferring the cargo on board their vessels; and which it is evident the master would have done, from his having commenced such jettison. I am of the opinion that the service of the libellants did not contribute to the saving of the ship, and that part of the cargo left on board of her at the time she came off the reef. It follows that these are not subject to any valid claim on the part of the libellants for salvage, and as to these the attachment of this court against them has improvidently issued.

The next question is, what amount of the value of that part of the ship's cargo, transferred on board the libellants' vessel ought to be decreed them as salvage? The value of this portion of the ship's cargo cannot be precisely ascertained without considerable delay to the ship's sailing on her voyage, and some expense and trouble. A part of it has been appraised; the rest is estimated. The whole is believed to be worth $30,000. From the pleadings and proofs it is clear that this amount of the value of the ship's cargo has been saved by the services of the libellants from certain total loss. But for their services this amount of property would certainly have been committed to the devouring ocean. It is quite probable, too, if the libellants had not been at hand to render assistance, that the master, in his anxiety to lighten his ship sufficiently to be sure of her going off the first favorable tide, would have thrown overboard more of his cargo than was saved in the libellants' vessels. The good conduct of the salvors in this case; their prompt readiness and willingness to render all the assistance in their power; their perfect good faith in giving good and withholding bad advice to the master when the ship was exposed to the greatest peril, and when the slightest mismanagement, the least imprudent experimenting in taking in, setting or trimming the sails, would inevitably have lost her; their promptness and willingness in assisting at the pumps to keep the ship free on her way from the reef to this port, and while she was being discharged at the wharf,—induces me to award to them upon the value of the property saved by them the highest rate of salvage which my views of the case and the rules of law will at all justify. By rewarding good conduct, good faith, and promptness to render assistance, when assistance is really needed, with a generous liberality, and by withholding this liberality when these virtues are wanting, or not apparent, I shall teach a moral lesson to the professional wreckers upon this coast that must and will secure comparative protection to the commerce of the Florida gulf. Impressed with these views, I shall in this case decree to the libellants as a salvage compensation the sum of $23,500. I feel that under the circumstances of this case, this is a large salvage, but as in governments and morals, so also in the decisions of this court, particular interests had better be made, sometimes, to yield to a certain extent to the greater interests of the general whole; and a general policy, which has for its object the safety of commerce through the dangerous Florida gulf, had better be vindicated and sustained, which policy requires that when the conduct of the professional wrecker is good it should be rewarded,—when bad, punished. See [Mason v. The Blaireau,] 2 Cranch, [6 U. S.] 240.

The clerk will enter up the decree in form.

---

[1] [Nowhere reported.]